\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In the Matter of the Arbitration Between

**GAYE LAFOE,**
**Claimant**

v.                                             **AAA Case No. 30 160 00554 03**

**CONNECTICUT GENERAL**
**LIFE INSURANCE COMPANY,**
**Respondent**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### RULING ON MOTION FOR SUMMARY JUDGMENT

**I.     Introduction**

Claimant Gaye LaFoe seeks to arbitrate her assertion that Respondent Connecticut General Life Insurance Co. (CGLIC)[1] discriminated against her in violation of the Americans with Disabilities Act. She alleges that Respondent regarded her as disabled when it rejected her many applications for re-employment. (The earlier elimination of her job as a Divisional Manager, which forced her to seek those other positions, is not at issue in this case.) Respondent has moved for summary judgment. Apart from some differences in emphasis, the parties agree on the relevant rules. They cite similar authority and for the most part they agree on its meaning if not its application.

At this stage of the proceeding, the initial question is whether Claimant has made a prima facie case of discrimination. Claimant concedes that Respondent has articulated legitimate nondiscriminatory reasons for rejecting her job applications. Therefore, if Claimant has made a prima facie case the next question is whether she has provided reason to believe that Respondent's asserted reasons are pretextual. With regard to both of those questions, the motion for summary judgment must be denied if Claimant simply demonstrates a genuine issue as to any material fact.

**II.    Prima Facie Case**

In this setting the elements required for a prima facie case are clear: Claimant must prove with regard to each application that (1) she was "regarded as" disabled by the applicable decision-maker; (2) she was otherwise qualified for the position; (3) she was rejected due to her perceived

---

[1] Claimant does not address Respondent's repeated assertions that CGLIC is the only proper Respondent in this case because Claimant never worked for, or applied for work with, the other entities named in her complaint. For convenience, therefore, I refer solely to CGLIC as the Respondent.

2

disability; (4) the decision-maker knew or had reason to know of her disability; and (5) after her rejection, the position remained open while the decision-maker sought other applicants. Respondent challenges Claimant's case on all of these but the last. Its key objection, however, is the first: that is, it argues that none of the decision-makers on Claimant's job applications believed that she was disabled.

"Recruiters" perform the initial screening of internal job applications. Respondent has submitted portions of the depositions of the Recruiters who in most instances decided not to pass on her applications to the relevant managers. All of them testified that they did not know of her disability leave, that they did not believe she was disabled, that they did not consider what they did know about her medical condition, or some combination of those statements. Unlike Respondent, Claimant did not address the particular job decisions in any detail. In particular and with only one exception, Claimant did not challenge Respondent's identification of the relevant decision-makers or the statements made by those individuals.

The one exception involves a Recruiter named Leigh Skonberg. Claimant alleges that Skonberg, while in a Human Resources position, said something to the effect that Claimant's "coming back in the office would be awkward because I was not well enough, they didn't feel like I was well enough to do anything." Even though the alleged statement, according to Respondent, was made before Claimant was released to return to work, the allegation at least raises an issue of a material fact, namely whether Skonberg regarded Claimant as disabled. Skonberg was involved in Claimant's applications for Customer Satisfaction Assistant Director and Claim Services Director. With regard to the other positions for which Claimant applied, she either did not know who the decision-makers were or did not allege that the decision-makers knew of her medical condition or regarded her as disabled. She does not assert any other connection between the people (some of whom she did not even identify) who commented on her medical status and the decisions on her applications.

In the absence of so much as an allegation that any decision-maker other than Skonberg regarded her as disabled, Claimant has failed to demonstrate a crucial part of her prima facie case. I must therefore grant the motion for summary judgment with regard to her applications for positions except the two in which Skonberg was involved, Customer Satisfaction Assistant Director and Claims Services Director.

With regard to the Customer Satisfaction Assistant Director position, Respondent's second line of defense is that Claimant was not "otherwise qualified" for the job. On a motion for summary judgment, a Claimant need not demonstrate that she was the *most* qualified candidate, just that she was "qualified" in the sense that she met the minimum requirements for the position. The job description for Customer Satisfaction Assistant Director listed as one requirement a "thorough understanding" of claims "processes" and "systems." Two of the Company's claims systems were MHS and PowerMHS. While Claimant was somewhat familiar with a third system, PROCLAIM, her experience using it stems from work she performed sixteen to eighteen years earlier. She admitted that she had no experience at all on the first two.

3

Claimant does not deny that MHS and PowerMHS were job requirements for this position. Nor does she assert that anyone lacking experience with those systems was selected for the job. I must therefore conclude that she was not "otherwise qualified" for Customer Satisfaction Assistant Director.

With regard to the Claims Services Director position, Respondent again argues that Claimant was not "otherwise qualified." This job too required knowledge of claims processes and systems; as with the previous position, two of the relevant systems were MHS and PowerMHS. Claimant does not deny that knowledge of those systems was a job requirement for this position, nor does she allege that anyone lacking that knowledge was selected in her stead. She admits that she lacked that knowledge. She was thus not "otherwise qualified" for Claims Services Director.

## III. Conclusion

The only claim in this proceeding is that Respondent rejected Claimant's applications because the decision-makers regarded her as disabled. Apart from Skonberg, Claimant did not even allege that any specific individual involved with filling the positions for which she applied regarded her as disabled. She thus failed to raise a genuine issue of material fact with regard to those decisions.

Even if the alleged comment by Skonberg were sufficient to show that Skonberg regarded her as disabled at the time Skonberg rejected her applications, Skonberg's perception could have affected only two of the challenged employment decisions. In each of those situations, however, Claimant failed to satisfy the minimum requirements — in particular, knowledge of two claims systems used by the holders of those jobs.

I find that Claimant failed to make a prima facie case of discrimination for any of her applications and therefore grant the motion for summary judgment with regard to all of her claims.

*[signature]*

**Dennis R. Nolan, Arbitrator and Mediator**

<u>May 7, 2004</u>
Date